## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| HYSTAD CEYNAR MINERALS, LLC, | ) | |
| On behalf of itself | ) | |
| and a class of similarly | ) | **ORDER** |
| situated persons, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00030 |
| | ) | |
| XTO ENERGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On August 7, 2023, Hystad Ceynar Mineral, LLC ("Hystad") filed a *Motion to Compel*. (Doc. No. 23). Hystad requests XTO Energy, Inc. ("XTO") produce documents in response to Hystad's first Request for Production of Documents, Interrogatories, and Requests for Admission. (*Id.*). XTO opposes Hystad's motion to compel. (Doc. No. 26). Hystad's motion to compel is granted in part and denied in part. The court shall address the parties' motion for sanctions and motions for protective orders in a separate order.

### I.    BACKGROUND

The following are facts taken from the parties' motions, pleadings, and supporting documents. The facts are presumed true for purposes of this order.

Hystad alleges within its Complaint that XTO failed to pay statutory interest on late payments. (Doc. No. 27). The putative class includes those persons who received one or more late payments but not statutory interest. (*Id.*).

On March 17, 2023, the parties submitted their Joint Report of Rule 26(f) Meeting and Joint Case Management Plan, in which Hystad stated its intent to remand the case to state court. (Doc. No. 23-1). The parties also agreed that disclosure of confidential information would be

necessary, requiring a proposed protective order be submitted to the court prior to production of discovery. (*Id.*).

Hystad sent a "proposed Protective Order and Confidentiality Agreement" to XTO on March 21, 2023. (*Id.*). On April 21, 2023, initial disclosures were exchanged, and on April 28, 2023, Hystad served its Discovery Requests. (*Id.*).

On May 25, 2023, XTO requested an extension of two weeks to respond to Hystad's Discovery Requests. (*Id.*). Hystad agreed to this request with the understanding XTO needed more time to gather responsive materials. (*Id.*). When Hystad subsequently followed up on the "proposed Protective Order and Confidentiality Agreement" the same day, XTO provided it had not finished reviewing and marking up the document. (*Id.*).

On June 13, 2023, XTO submitted its responses and objections to Hystad's Discovery Requests. (*Id.*).

On June 26, 2023, when asked about the "proposed Protective Order and Confidentiality Agreement," XTO indicated that it was not comfortable producing confidential information until after the court ruled on the motion to remand, as any previously signed order would be moot if the court finds it does not have jurisdiction. (*Id.*). This was reiterated by XTO on June 28, 2023. (Doc. No. 23-6).

On July 7, 2023, the parties had a status conference, where XTO confirmed no documents had been provided as no protective order and confidentiality agreement was in place. (Doc. No. 23-1). The parties were court-ordered to confer on the protective agreement and confidentiality agreement by July 21, 2023, and discuss XTO's objections to Hystad's Discovery Requests. (*Id.*).

On July 18, 2023, the parties conferred regarding XTO's objections to Hystad's Discovery Requests and were partially successful. (*Id.*). To date, XTO has not produced a single document to Hystad. (*Id.*).

The parties have not had success with the protective order and confidentiality agreement as Hystad disagrees that a protective order can or should include a liquidated damages clause under North Dakota law. (*Id.*).

## II.   LEGAL STANDARD

Motions to compel discovery are authorized under Rule 37 of the Federal Rules of Civil Procedure. Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). "The scope of discovery under Rule 26(b) is extremely broad." *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)). "Discovery information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery." *Colonial Funding Network, Inc. v. Genuine Builders, Inc.*, 326 F.R.D. 206, 211 (citing FED. R. CIV. P. 26(b)(1)). After the threshold showing of relevance by the proponent of discovery, the burden shifts to the party opposing the motion to compel to show how each discovery request is improper, through specific explanations or factual support. *Jo Ann Howard & Assocs., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508,

511-12 (N.D. Iowa 2000)). "The party must demonstrate to the court 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Jo Ann Howard & Assocs., P.C.*, 303 F.R.D. at 542 (quoting *Burke v. New York City Police Dep't.*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

## III.   DISCUSSION

### a.   Order to Compel

Hystad asserts that XTO has not produced a single document in response to its Discovery Requests from April 28, 2023. (Doc. No. 23). In response, XTO argues that it is justified in waiting to produce documents until the protective order is in place. (Doc. No. 27). XTO responded to Hystad's First Request for Production of Documents, Interrogatories and Requests for Admission with the following general objections:

### <u>GENERAL OBJECTIONS</u>

XTO objects to the portions of instruction 2 that purport to require XTO to obtain and produce information that is outside of XTO's "possession, custody, or control" as defined by the Federal Rules of Civil Procedure. As an example, documents that "XTO's agents, employees, affiliates, [and] representatives . . . have the ability to obtain from any source whatsoever" includes documents outside the possession, custody, or control of XTO. In responding to the Requests, XTO will produce responsive information that is within the possession, custody, or control of XTO.

Several of the instructions and definitions (instructions 3 and 6 and the definitions of "and" and "or") ask XTO to interpret or re-draft the Requests. As an example, instruction 3 asks XTO to provide "either the most common or most accurate" definition of an undefined term, then state that definition in its response. The Federal Rules of Civil Procedure put the onus on Plaintiff to draft clear requests that specify, with reasonable particularity, what information it requests and, therefore, instructions 3 and 6 and the definitions of "and" and "or" attempt to impose a burden that is not permitted by the Rules. Additionally, instructions 3 and 6 and the definitions of "and" and "or" are vague and ambiguous. XTO will interpret the Requests as Plaintiff wrote them and will object where appropriate.

Instructions 4 and 8, which pertain to assertions of privilege, instruct XTO to provide information beyond that required by Federal Rule of Civil Procedure 26(b)(5). Specifically, instructions 4 and 8 seek a factual narrative regarding XTO's privilege assertions. XTO objects to those portions of the instructions as attempting to impose a burden not permitted by Rule 26(b)(5). If XTO withholds a document based upon privilege, XTO will comply with rule 26(b)(5).

XTO objects to the portion of instruction 5 that seeks personal information, such as "last known resident address" and "last known telephone numbers" regarding non-parties. Plaintiff is not entitled to that information and it is not relevant or likely to lead to admissible evidence. The portion of instruction 5 that seeks information regarding "current employer, employer at the time of the transaction referred to, and relationship to any party in this action" similarly seeks information that is not relevant or likely to lead to admissible evidence and, in many cases (*e.g.*, royalty owners) , seeks information outside of XTO's possession, custody, or control.

XTO objects to the portion of instruction 7 that instructs XTO to "state the facts on which XTO relies to support its contention [that XTO cannot fully and completely answer a Request], and state what knowledge, information, and belief XTO has concerning the unanswered portion of each such Request." The Rules do not require XTO to provide the requested narrative and, therefore, XTO objects to that portion of the definition. In answering the Requests, XTO will comply with Rules 26, 33, 34, and 36.

XTO objects to instructions 9 and 10 as attempting to impose a burden beyond that permitted by Rule 34. XTO will produce each document in the form permitted by Rule 34(b)(2)(E). Further, XTO objects to the portion of instruction 9 that seeks production of "any correlating native files" as vague and ambiguous.

XTO objects to the portion of the definition of the term "Owner" that asks XTO to determine "who is entitled to receive royalties under an oil and gas lease . . ." as attempting to impose a burden upon XTO that belongs to Plaintiffs. As the Court explained in *Hystad Ceynar Minerals, LLC v. Whiting Oil & Gas Corp.*, No. 1:22-cv-138, 2023 WL 3467461, at *4 (D.N.D. May 15, 2023), determining who fits that criteria is a highly individualized analysis. To the extent Plaintiff believes it is worthwhile to undertake that effort, the burden belongs to Plaintiff and may not be shifted to XTO under the guise of discovery. The burden of undertaking the effort is not proportional to the needs of this case.

The defined term "Payment" includes the defined terms "Proceeds," "Owner," and XTO Well," each of which is objectionable for the reasons set forth in these responses. XTO incorporates by reference its objections to those three defined terms in its objections to the term "Payment." Further, XTO objects to the portion of the definition of the term "Payment" that includes non-royalty payments as overly broad and attempting to impose a burden disproportional to the needs of the

case. Royalties are the only payments to which N.D.C.C. § 47-16-39.1 applies. *Sandy River Resources, LLC v. Hess Bakken Investments II, LLC*, No. 1:22-cv-108, 2023 WL 1801958, at *2 (D.N.D. Feb. 7, 2023).

The defined term "Proceeds" includes the term "XTO Well" and, therefore, XTO incorporates by reference its objections to the term "XTO Well" in its objections to "Proceeds." Further, XTO objects to the portion of the definition of the term "Proceeds" that includes nonroyalty payments as overly broad and attempting to impose a burden disproportional to the needs of the case. Royalties are only payments to which N.D.C.C. § 47-16-39.1 applies.

The defined term "XTO Well(s)" includes the defined terms "Proceeds" and "Owners" and, therefore, XTO incorporates by reference its objections to those terms in its objections to the term "XTO Well(s)." As drafted, the definition of "XTO Well(s)" would shift the burden of identifying who is entitled to receive under an oil and gas lease, pursuant to the statute, upon XTO and would include payments other than royalty payments (*i.e.*, payments to which N.D.C.C. § 47-16-39.1 does not apply). XTO objects to those portions of the definition of "XTO Well(s)" as overly broad, imposing a burden not permitted by the Rules, and imposing a burden upon XTO that is not proportional to the needs of the case.

XTO objects to the definition of the term "Untimely Payment" because it is inconsistent with the provisions of N.D.C.C. § 47-16-39.1, which addresses payments made "one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought," and which is further modified by the inclusion of several safe harbor provisions. Therefore, Plaintiff's definition is misleading and improper. Further, XTO incorporates by reference in its objections to the term "Untimely Payment" its objections to the terms "Payment," "Owner," and "XTO Well."

XTO objects to the definition of the term "Operator" because it is not in accordance with N.D.C.C. § 47-16-39.1, which does not define the term "operator," and because it is not limited to the State of North Dakota. Therefore, Plaintiff's definition is overly broad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit.

XTO objects to the second and third paragraphs of the definition of "document" or "documents" as attempting to impose a burden that is not permitted by Rule 34. Rule 34 does not require XTO to provide narratives regarding documents that are not in existence or in XTO's control. Additionally, XTO further objects that the third paragraph of the definition of "document" or "documents" seeks information that is not reasonably accessible to XTO and, therefore, is not required to be produced. The burden of locating and searching electronic information that is not reasonably accessible to XTO is not proportional to the needs of this case.

XTO reserves the right to supplement and/or modify any General Objection, Specific Objection, Answer, or Response to the Requests as additional information becomes available to XTO.

XTO's responses to the Requests do not waive its right to challenge the relevance, materiality, or admissibility of the information that is sought or to object to the use of the information at trial or at any other proceeding related to this action.

(Doc. No. 23-5).

What follows are Hystad's Interrogatories and Request for Production of Documents and XTO's

specific responses to each of them.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify the names and addresses of each Owner.

**ANSWER:** XTO incorporates by reference herein its objections to instruction 5 in the Requests, which pertains to identification, and the term "Owner." For the reasons stated in its objections to that instruction and those terms, this interrogatory would impose a burden that is not permitted by the Rules and that is not proportional to the needs of the case.

  Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order and in accordance with Rule 33(d), XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present. The documents produced by XTO will reflect the information regarding the royalty payments that is shown on the check detail in the ordinary course of business.

**INTERROGATORY NO. 2:** Identify each XTO Well from which XTO has produced oil, gas, or related hydrocarbons and has made a Payment to any Owner identified in Interrogatory No. 1 or has withheld a Payment from any Owner for any reason.

**ANSWER:** XTO incorporates by reference herein its objections to the terms "XTO Well," "Payment," and "Owner." For the reasons stated in its objections to those terms, this interrogatory is overbroad and would impose a burden that is not permitted by the Rules and that is not proportional to the needs of the case. Further, XTO objects to the portion of the interrogatory that seeks information regarding payments that have not been made. Plaintiff has not asserted any claim regarding royalty payments withheld by XTO and, pursuant to N.D.C.C. § 47-16-39.1, could not assert a claim for statutory interest regarding payments XTO has not made.

  Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order and in accordance with Rule 33(d), XTO will produce

check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present.

**INTERROGATORY NO. 3:** Describe in detail XTO's policies or procedures relating to the calculation and payment of interest for Untimely Payments or XTO's compliance with its obligations as an Operator under N.D.C.C. § 47-16-39.1.

**ANSWER:** XTO incorporates by reference herein its objections to the terms "Untimely Payments" and "Operator." For the reasons stated in its objections to those terms, this interrogatory is overbroad and would impose a burden that is not permitted by the Rules and that is not proportional to the needs of the case. Furthermore, because the interrogatory includes terms with definitions inconsistent with the plain language of N.D.C.C. § 47-16-39.1, it is misleading and seeks information not relevant or likely to lead to admissible evidence.

  Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order and in accordance with Rule 33(d), XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**INTERROGATORY NO. 4:** Identify the XTO employees who are responsible or otherwise involved with:
a) Suspending or otherwise withholding Payment of Proceeds to Owners;
b) Determining whether a dispute of title exists that would affect the distribution of Payments or if an Owner could be located contemplated under N.D.C.C. § 47-16-39.1;
c) Calculating the interest due to an Owner upon the issuance of an Untimely Payment;
d) Ensuring that interest payments are made by XTO in accordance with N.D.C.C. § 47-16-39.1;
e) Overseeing XTO's compliance with N.D.C.C. § 47-16-39.1; and
f) Who participated in preparing XTO's responses to these Requests.

**ANSWER:** XTO incorporates herein by reference, its objections to instruction 5 and the defined terms "Payment," "Proceeds," "Owner(s)," and "Untimely Payment." Further, XTO objects that the request is overbroad and seeks information not relevant or likely to lead to admissible evidence. For example, the name and personal information regarding every XTO employee who had any involvement with any of the six activities described over a nearly seven-year period is not relevant to or likely to lead to admissible evidence in this case. Over the last seven years, XTO has employed a large number of people in at least three different groups (*e.g.*, revenue accounting, division orders, and land) who handled aspects of XTO land work, division order work, royalty payments, and payments of statutory interest pursuant to N.D.C.C. § 47-16-39.1. As noted by the Court in the *Whiting* case, the analysis of XTO's compliance would be a highly individualized inquiry.

Furthermore, the identification of each person who participated in preparing XTO's discovery responses is (a) protected by work product and attorney client privileges and (b) not relevant or likely to lead to admissible evidence.

Subject to and without waiving the foregoing objections, Mr. Eric Schlegel, who is currently employed by XTO, has had the primary responsibility for handling XTO's payments of North Dakota statutory interest. Ms. Holly Green, who is currently employed by XTO, can address XTO's payments of North Dakota statutory interest subsequent to the time period that Mr. Schlegel handled the process.

**INTERROGATORY NO. 5:** Identify all Owners who received an Untimely Payment from an XTO Well and who were not paid interest in accordance with N.D.C.C. § 47-16-39.1, including: the reason for not paying interest; the amount of Proceeds eventually paid by XTO; and the amount of interest owed.

**ANSWER:** XTO incorporates by reference herein its objections to the terms "Owners," "Untimely Payment," "XTO Well," and "Proceeds." For the reasons stated in its objections to those terms, this interrogatory is overbroad and would impose a burden that is not permitted by the Rules and that is not proportional to the needs of the case. Furthermore, because the interrogatory includes terms with definitions inconsistent with the plain language of N.D.C.C. § 47-16-39.1, it is misleading and seeks information not relevant or likely to lead to admissible evidence.

Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order and in accordance with Rule 33(d), XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**INTERROGATORY NO. 6:** Identify all Owners who received Untimely Payments from an XTO Well and who were paid interest in accordance with N.D.C.C. § 47-16-39.1. For each Owner identified, state: the reason for including interest; the name of the XTO Well; the amount of Proceeds paid; and the amount of interest included in such Payment.

**ANSWER:** XTO incorporates by reference herein its objections to the terms "Owners," "Untimely Payment," "XTO Well," and "Proceeds." For the reasons stated in its objections to those terms, this interrogatory is overbroad and would impose a burden that is not permitted by the Rules and that is not proportional to the needs of the case. Furthermore, because the interrogatory includes terms with definitions inconsistent with the plain language of N.D.C.C. § 47-16-39.1, it is misleading and seeks information not relevant or likely to lead to admissible evidence.

Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order and in accordance with Rule 33(d), XTO will produce

check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**INTERROGATORY NO. 7:** Identify all persons or entities with whom XTO has contracted with, designated or otherwise agreed with to perform its revenue accounting or Payments related to the production of oil, gas, or related hydrocarbons from any XTO Well since November 8, 2016. For each person or entity identified, provide the dates during which each person or entity performs such functions for XTO.

**ANSWER:** XTO incorporates herein by reference, its objections to instruction 5 and the defined terms "Payments" and "XTO." Further, XTO objects that the request is overbroad and seeks information not relevant or likely to lead to admissible evidence. For example, this case does not pertain to all of XTO's revenue accounting or any payments other than royalty payments for production from North Dakota wells.

 Subject to and without waiving the foregoing objection, XTO's revenue accounting department is responsible for the royalty payments made by XTO related to North Dakota wells.

**INTERROGATORY NO. 8:** Identify the amount of money XTO holds in suspense for Owners in all XTO Wells, including: identify the accounts holding such money and identify all procedures employed by XTO or on XTO's behalf to ensure that the Owners' Proceeds are regarded as separate and distinct from all other funds held, managed, or controlled by XTO.

**ANSWER:** XTO incorporates by reference herein its objections to the terms "Owners," "XTO Wells," and "Proceeds." Further, XTO objects that any royalty payments held in suspense (*i.e.*, royalty payments that have not been made) are not relevant to or likely to lead to admissible evidence in this case. Plaintiff has not asserted (and could not assert) a claim pursuant to N.D.C.C. §47-16-39.1 regarding royalty payments XTO has not yet made. XTO further objects that the request would impose a burden that is not proportional to the needs of the case.

**INTERROGATORY NO. 9:** Identify the revenue and royalty accounting systems XTO has used since November 8, 2016 to calculate and make Payments to the Owners identified in response to Interrogatory No. 1.

**ANSWER:** XTO incorporates herein by references its objections to the terms "Payments" and "Owners." XTO further objects to the interrogatory as seeking information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. XTO further objects that to this Request as vague and ambiguous. It is not clear what Plaintiff means by "revenue and royalty accounting systems."

Subject to and without waiving the foregoing objections, XTO has used two different revenue accounting systems: Avatar and SAP/PRA.

**INTERROGATORY NO. 10:** Identify all lawsuits in which XTO is or was a defendant wherein it was claimed that XTO failed to pay interest on Untimely Payments. In response to this Interrogatory, please state the names of the parties, the Court in which the lawsuit is/was filed, the case number for the lawsuit, and the date such lawsuit was filed.

**ANSWER:** XTO incorporates herein its objection to the term "Untimely Payments." Further, this interrogatory seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. XTO further objects to this Request to the extent to it requires XTO to furnish or produce information that is public and, therefore, equally accessible and available to Plaintiff. XTO further objects that the request would impose a burden that is not proportional to the needs of the case.

## REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Produce, in electronic format, the payment detail for each Owner identified by XTO who has received a Payment associated with the production of oil, gas, or related hydrocarbon from any XTO Well since November 8, 2016.

The electronic payment detail produced by XTO shall identify for each Payment made, the: (1) Owner's name and address; (2) the XTO Well associated with the Payments made to the Owner; (3) the products produced by XTO each month associated with that Owner's interest; (4) the production date for the oil, gas, or other related hydrocarbons produced and associated with the Payment; (4) the sale date of the oil, gas, or related hydrocarbons associated with the Payment; (5) the date such Payment was made to each Owner; (6) the amount of Proceeds paid to each Owner, including any deductions made; and (7) the XTO Owner number associated with each Payment.

**RESPONSE:** XTO incorporates herein by references its objections to the terms "Owner," "Payment," "XTO Well," and "Proceeds." Due to the definitions of those terms, this request seeks information that is not relevant in this case or likely to lead to admissible evidence. XTO also objects that the request seeks documents that do not exist. For example, XTO does not have payment detail that reflects the sale date of the oil, gas, or related hydrocarbons. XTO further objects to this request to the extent it requests XTO to produce documents in a format other than its native format or to include information not included in its native format.

Subject to and without waiving the foregoing objections, after entry of an appropriate protective order, XTO will produce, in native format, its check details for all North Dakota royalty payments made by XTO since November 8, 2016. The documents produced by XTO will reflect the information regarding the royalty payments that is shown on the check detail in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 2:** Produce any and all Documents identified in XTO's Response to Plaintiff's Interrogatories.

**RESPONSE:** After entry of an appropriate protective order, XTO will produce the documents identified in its answers to Plaintiff's Interrogatories.

**REQUEST FOR PRODUCTION NO. 3:** If XTO has ever made a N.D.C.C. § 47-16-39.1 interest payment to any Owner since November 8, 2016, produce all Documents referencing XTO's calculation and payment of the interest. Such production shall include but is not limited to: (a) any communications between XTO and the Owner about the interest payment and calculation of the interest; (b) any internal communications among XTO's employees, representatives, and consultants about the interest payment or calculation of the interest paid; and (c) any stated reason(s) for the interest payment.

**RESPONSE:** XTO incorporates herein by reference its objections to the term "Owner." Further, XTO objects that the request seeks documents, such as communications, that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit, particularly at this stage of the litigation. XTO further objects that the burden of producing every document that relates to all of XTO's statutory interest payments in North Dakota over a nearly seven-year time period is not proportional to the needs of this case.

   Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order, XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**REQUEST FOR PRODUCTION NO. 4:** Produce any and all Documents concerning any instance where an Owner has requested the payment of interest under N.D.C.C. § 47-16-39.1 associated with the production and sale or oil, gas, or related hydrocarbons from an XTO Well since November 8, 2016, including but not limited to, the Owner's request, XTO's response, and XTO's internal communications about the request.

**RESPONSE:** XTO incorporates herein by reference its objections to the terms "Owner" and XTO Well." Further, XTO objects that the request seeks documents, such as communications, that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit, particularly at this stage of the litigation. XTO further objects that the burden of searching for and producing every document that relates to any request for North Dakota statutory interest over a nearly seven-year time period is not proportional to the needs of this case. XTO pays North Dakota statutory interest without prior request and, therefore, any requests (if they exist) are irrelevant to the issues in the case.

Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order, XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**REQUEST FOR PRODUCTION NO. 5:** Produce any and all Documents, including any agreements with any Owner, which XTO believes supports its contention that any Owner has waived or released XTO from its obligation to pay interest on any Untimely Payment since November 8, 2016.

**RESPONSE:** XTO incorporates herein by reference its objections to the terms "Owner" and "Untimely Payment." XTO further requests that the request seeks to impose a burden that is not proportional to the needs of the case, particularly at this stage of the litigation. Producing responsive documents would require review and analysis of every lease, division order, and agreement that XTO has in North Dakota.

**REQUEST FOR PRODUCTION NO. 6:** Produce any and all Documents evidencing, demonstrating, and/or reflecting the proceeds XTO currently is holding for any Owners related to any production month since November 8, 2016, including but not limited to: (a) any spreadsheets maintained by XTO or a third-party evidencing the particulars regarding the amounts being held for each Owner for each XTO Well and in the aggregate; (b) the reason why XTO is holding the Payments for each Owner for each XTO Well; (c) definitions for each code or heading in the spreadsheets or other records being produced; (d) each Owners' name, address, and internal royalty owner number; and (e) XTO's efforts to pay out the money to each Owner.

**RESPONSE:** XTO incorporates herein by reference its definitions to the terms "Owners," "Payments," and "XTO Well." XTO further objects that the request seeks information that is not relevant to this case or likely to lead to admissible evidence. Plaintiff has not pled (and cannot plead) claims for statutory interest regarding royalty payments that XTO has not yet made. XTO further objects that the request attempts to impose a burden that is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 7:** Produce any and all Documents which XTO intends to rely on to support its decision not to pay an Owner interest when XTO made any Untimely Payment as set forth under N.D.C.C. § 47-16-39.1.

**RESPONSE:** XTO incorporates herein its objections to the terms "Owner" and "Untimely Payment." XTO further objects that the request is overly broad and seeks information that is not relevant to the current focus of the lawsuit—the propriety of certifying Plaintiff's claims. The request would require XTO to produce all

marketing and post-production service contracts in North Dakota, all oil and gas leases and other contracts with royalty owners in North Dakota, all title-related documents related to every royalty interest in North Dakota, and all documents related to all of XTO's efforts to locate all royalty owners in North Dakota. The burden of responding to this request is not proportional to the needs of this case, particularly given the current procedural status of the case.

Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order, XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**REQUEST FOR PRODUCTION NO. 8:** Produce any and all Documents concerning XTO's policies, procedures, and/or practices regarding Payments, suspension, or withholding of Payments in accordance with N.D.C.C. § 47-16-39.1 since November 8, 2016 on any XTO Well.

**RESPONSE:** XTO incorporates herein by reference its objections to the terms "Documents," "Payments," and "XTO Well." XTO further objects that this request is overly broad and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. As drafted, the request would include vast swaths of documents related to all of XTO's royalty payments for North Dakota wells within a time period of nearly seven years. The burden of responding to this request is not proportional to the needs of the case, particularly at this stage of the litigation.

Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order, XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

**REQUEST FOR PRODUCTION NO. 9:** Produce any and all Documents concerning any persons or entities with whom XTO has an agreement to provide revenue accounting functions or payment to Owners' functions associated with any Proceeds from XTO Wells regarding the payment of statutory interest earned pursuant to N.D.C.C. § 47-16-39.1 since November 8, 2016 on any XTO Well.

**RESPONSE:** XTO incorporates herein by reference its objections to the terms "Owners," "Proceeds," and "XTO Well." XTO further objects that to this Request as vague and ambiguous. It is not clear what Plaintiff means by "revenue accounting functions or payment to Owners' functions."

Subject to and without waiving the foregoing objections, XTO's revenue accounting department performs XTO's revenue accounting for wells located in North Dakota. As such, there are no agreements with third parties.

**REQUEST FOR PRODUCTION NO. 10:** Produce XTO's policies, procedures, or practices for determining marketability of title for Owners.

**RESPONSE:** XTO incorporates herein by reference its objection to the term "Owners." XTO further objects that the request seeks documents that are not relevant to this lawsuit or likely to lead to admissible evidence. XTO further objects that the request for "practices" and the reference to "marketability of title" are vague and ambiguous. "Marketability of title" is not defined and is not a term pertinent to the N.D.C.C. § 47-16-39.1.

**REQUEST FOR PRODUCTION NO. 11:** Produce all Documents concerning each amount of Proceeds and interest on Proceeds suspended by XTO from any Owner in an XTO Well; including:
a) The name of each Owner;
b) The XTO Well name;
c) Date the Payments for each Owner were suspended;
d) Reasons XTO suspended the Payments;
e) Date the Proceeds were released from suspense to the Owner; and
f) Amount of Proceeds included in the Payment.

**RESPONSE:** XTO incorporates by reference herein its objections to the terms "Proceeds," "Owner," "XTO Well," and "Payment(s)." The request is overly broad and includes documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Plaintiff has not asserted (and cannot assert) claims regarding statutory interest on royalty payments not yet made by XTO. XTO further objects that the request attempts to impose a burden that is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 12:** Produce all Documents referring to N.D.C.C. § 47-16-39.1.

**RESPONSE:** XTO incorporates by reference herein its objection to the term "Documents." XTO further objects to this Request as overly broad, unlimited in time and in scope, and as seeking documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Searching for and producing "all Documents referring to N.D.C.C. § 47-16-39.1" would impose a burden disproportionate to the needs of this case.

**REQUEST FOR PRODUCTION NO. 13:** Produce Documents, including leases, division orders, pooling orders, and royalty payment information related to XTO Wells in which the Owners have an interest.

**RESPONSE:** XTO incorporates by reference herein its objections to the terms "Documents," "XTO Wells," and "Owners." Further, XTO objects that this request is overly broad, unlimited in time and in scope, and seeks documents that are not

relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. As drafted, the request would require XTO to produce every document related to every North Dakota well. The burden of responding to this request is not proportional to the needs of this case.

**REQUEST FOR PRODUCTION NO. 14:** Produce Documents, identifying each XTO Well, the date of first production, the API Number, and the date of the first sale of production for each XTO Well.

**RESPONSE:** XTO incorporates by reference herein its objections to the terms "Documents" and "XTO Well." XTO further objects that the request is overly broad and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. XTO further objects that the request seeks documents that do not exist in the ordinary course of business. XTO objects that the burden of responding to the request is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 15:** Produce Documents that identify or calculate Untimely Payments to Owner, including Documents that identify or calculate the number of days late or the amount of interest owed as a result of any Untimely Payment, including documents identifying your accruals for interest owed.

**RESPONSE:** XTO incorporates by reference its objections to the terms "Documents," "Untimely Payments," and "Owner." Due to its use of those terms, the request is overly broad and seeks documents that are not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. XTO further objects that the burden of responding to the portions of the request to which XTO as objected (due to the defined terms) is disproportionate to the needs of the case.

   Subject to and without waiving the foregoing objections, after entry of an appropriate Protective Order, XTO will produce check detail reflecting all royalty payments made by XTO for wells in North Dakota from November 8, 2016 to present and, to the extent it is reasonably accessible and available in usable format, its calculations of the many North Dakota statutory interest payments made by XTO since November 8, 2016.

(Doc. No. 23-5).

### i.    XTO's General Objections

Hystad argues that XTO has an objection to nearly every one of the definitions in its Discovery Requests, and that the objections are improper boilerplate or general objections. Hystad requests the court strike the objections. Rule 34 requires that "the response must either state that

inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010).

> General objections are of little value. In the face of such objections, it is impossible to know whether information has been withheld and, if so, why. This is particularly true where a general objection has been incorporated into the responses to particular requests with no attempt to show the application of each objection to the particular request.

*Rychner v. Cont'l Res., Inc*., No. 1:19-cv-071, 2021 WL 2211110, at *4 (D.N.D. June 1, 2021).

The court finds it difficult to determine which of XTO's general objections Hystad takes specific issue with, as XTO has fifteen general objections. The court will address the general objections as it deems appropriate. To the extent XTO incorporates by reference an objection that the court has or will address in this order, whether in the General Objections, Interrogatories, or Request for Production, the court will not address it again.

In general objection seven (7), XTO objects to the term "Owner," insofar as it asks XTO to determine "who is entitled to receive royalties under an oil and gas lease…." (Doc. No. 23-5). XTO asserts that this imposes a burden on XTO that belongs to Hystad. (*Id*.). The full definition of "Owner" written by Hystad is as follows: "'Owner' shall refer to any person or entity who is a mineral owner or mineral owners' assignee who is entitled to receive Proceeds from oil, gas, or related hydrocarbons from an XTO well." (Doc. No. 23-8). The court is not persuaded by the argument XTO cites to in *Hystad Ceynar Minerals, LLC*, under which XTO argues that the determination of who fits the criteria of being entitled to royalties under an oil and gas lease is a highly individualized analysis. *See Hystad Ceynar Minerals, LLC v. Whiting Oil & Gas Corp.*, No. 1:22-cv-138, 2023 WL 3467461, at *4 (D.N.D. May 15, 2023). Even if it were found to be an

individualized analysis, this information has already been provided to XTO's expert witness (Doc. No. 23-1). Accordingly, the court finds this definition does not impose an undue burden and strikes general objection seven (7).

In general objection eight (8) XTO objects to "Payment," arguing that the portion of the definition including non-royalty payments is overly broad and attempts to impose a burden disproportional to the needs of the case. It also argues that "[r]oyalties are the only payments to which N.D.C.C. § 47-16-39.1 applies." *See Sandy River Resources, LLC, v. Hess Bakken Investments II, LLC*, No. 1:22-cv-108, 2023 WL 1801958, at *2 (D.N.D. Feb. 7, 2023). Hystad has defined "Payment" as "Proceeds remitted to any Owner by XTO associated with the production and sale of oil, gas, or any related hydrocarbons from an XTO Well." (Doc. No. 23-8). Absent more, the court is not inclined to make a determination on the issue that the definition of "Payment" includes non-royalty payments. The court notes that while information may be provided during the discovery process, it may not be admissible later in the litigation process. Accordingly, the court strikes general objection eight (8).

In general objection nine (9), XTO objects to the term "Proceeds" insofar as it includes "non-royalty payments as overly broad and attempting to impose a burden disproportional to the needs of the case. Royalties are only payments to which N.D.C.C. § 47-16-39.1 applies." (Doc. No. 23-5). Hystad has defined the term as "the proceeds or other revenue derived from or attributable to any production and sale of oil, gas, or any related hydrocarbons from any XTO Well." (Doc. No. 23-8). The court shall not revisit the argument about royalties. General objection nine (9) is stricken.

XTO objects to the definition of "XTO Well(s)" in general objection ten (10). Hystad defines "XTO Well(s)" as "all oil and gas wells in the State of North Dakota in which XTO has

produced oil, gas, or any related hydrocarbon and has had an obligation to pay Proceeds to Owners entitled thereto since November 8, 2016." (Doc. No. 23-8). XTO argues that this definition "would shift the burden of identifying who is entitled to receive under an oil and gas lease, pursuant to the statute, upon XTO and would include payments other than royalty payments…." (Doc. No. 23-5). It also asserts that the definition is not proportional to the needs of the case, is overly broad, and imposes a burden not permitted by the Rules. (*Id.*). XTO does not provide evidence for its argument beyond a general statement that Hystad's definition "would shift the burden of identifying who is entitled to receive under an oil and gas lease, pursuant to the statute…." The court is not inclined to decide in XTO's favor without knowing to what statute XTO refers. Further, the court has already made a determination as to payments other than royalty payments in general objection eight (8) and is not persuaded to revisit the argument. Moreover, as the court previously made a determination as to the incorporated terms to which XTO objects, the court finds that general definition ten (10) is not overly broad, does not impose a burden, and is proportional to the needs of the case. The court strikes general objection ten (10).

In general objection eleven (11), XTO objects to the definition of the term "Untimely Payment," arguing that it is inconsistent with the provisions of N.D.C.C. § 47-16-39.1, and several safe harbor provisions. (Doc. No. 23-5). Hystad has defined "Untimely Payment" as "any Payment to any Owner made by XTO which is later than one hundred fifty days after the oil or gas produced was from an XTO Well." (Doc. No. 23-8). The court finds that the definition of "Untimely Payment" shall be modified as follows: "Untimely Payment" shall mean any Payment to any Owner made by XTO not within one hundred fifty days after oil or gas produced under the lease is marketed from an XTO well and cancellation of the lease is not sought.

General objection twelve (12) asserts an objection to the definition of the term "Operator." XTO argues that Hystad's definition is not in accordance with N.D.C.C. § 47-16-39.1 as it does not define "operator," and is not limited to North Dakota. (Doc. No. 23-5). Hystad defines operator as "the person or entity who owns any interest in an oil and gas lease who has the right to produce oil, gas, or related hydrocarbons therefrom." (Doc. No. 23-8). The court finds that as XTO failed to provide an alternative definition for the court's consideration, Hystad's definition is proper, and the court strikes general objection twelve (12).

In general objection thirteen (13), XTO objects to the second and third paragraphs of Hystad's definition of the term "document" or "documents." XTO alleges that Hystad is imposing a burden beyond that required by Rule 34, the third paragraph seeks information not reasonably accessible to XTO, and the burden of locating and searching electronic information that is not reasonably accessible is not proportional to the needs of the case. (Doc. No. 23-5). Paragraphs two and three of Hystad's definition for "document" or "documents" state:

> If a Document described by the Request was, but no longer is, in existence or in the control of XTO, XTO should state the present or last known location of that Document and the names and addresses of the persons with knowledge of the content of that Document.
> Note that electronic files, Documents, and email messages are not necessarily destroyed or unavailable because XTO or XTO's agents deleted the items as part of the general course of business. Requests for Production includes searches for electronic documents, computer files, computer logs, or email messages on hard drives, network backup tapes, backup information on any type of electronic medium, paper reproductions of electronic documents or file directories, or any other electronic or printed resource which identifies the location of an item requested.

(Doc. No. 23-8).

To the extent that XTO is aware of Documents described in the Request that are no longer in existence or in control of XTO, XTO is ordered to present the last known location of the Document and names and addresses of those with knowledge of the Document.

Regarding the third paragraph of the definition, the court finds that the burden is reasonably proportional to the needs of the case. Electronically stored information must be preserved in anticipation and during the pendency of litigation. *See* FED. R. CIV. P. 37(e). Accordingly, XTO should not have deleted its electronic files during the ordinary course of business in anticipation of or throughout the course of this litigation. The third paragraph does not impose a burden on XTO to locate information that is not reasonably accessible. Accordingly, the court strikes objection thirteen (13).

### ii.    XTO's Objections to Interrogatories Nos. 1, 2, 3, 5, 6, 8, and 10

Hystad argues that XTO's objections are improper boilerplate objections with many asserting that the Interrogatories are unduly burdensome. The court shall consider XTO's objections to Hystad's Interrogatories in turn.

In Interrogatory No. 1, Hystad requests the names and addresses of each Owner. XTO should have ready access to the names and addresses of the Owners. Accordingly, the court strikes the portion of XTO's answer asserting that the "interrogatory would impose a burden that is not permitted by the Rules and that is not proportional to the needs of the case."

As to Interrogatory Nos. 2, 3, 5, and 6, the court has previously addressed XTO's objections to each referenced term XTO attempts to incorporate into its argument that the interrogatories are overbroad, would impose a burden not permitted by the Rules and that are not proportional to the needs of the case. As the court has already made its ruling on the general objections to the referenced terms, it is inclined to strike answers to Interrogatory Nos. 2, 3, 5, and 6, in which XTO asserts the interrogatory is overbroad, would impose a burden not permitted by the Rules, and is not proportional to the needs of the case.

XTO's answer to Interrogatory No. 8 asserts that "the request would impose a burden that is not proportional to the needs of the case." (Doc. No. 23-5). In its Interrogatory, Hystad requests XTO:

> [i]dentify the amount of money XTO holds in suspense for Owners in all XTO Wells, including: identify the accounts holding such money and identify all procedures employed by XTO or on XTO's behalf to ensure that the Owners' Proceeds are regarded as separate and distinct from all other funds held, managed, or controlled by XTO.

(*Id.*).

After a review of the record, the court finds that the request would not be disproportional to the needs of the case. XTO should have ready access to its accounts, including those holding money in suspense, as well as to the procedures employed by XTO. As such, the court strikes the portion of XTO's answer asserting Interrogatory No. 8 imposes a disproportional burden.

In Interrogatory No. 10, XTO "objects that the request would impose a burden that is not proportional to the needs of the case." (Doc. No. 23-5). This Interrogatory request asks for all lawsuits in which XTO is or was a defendant and includes a claim that XTO failed to pay interest on Untimely Payments. (*Id.*). XTO is to include the name of the parties, the court where the lawsuit was filed, the case number, and the date of filing. (*Id.*). The court is not persuaded that Interrogatory No. 10 imposes a burden not proportional to the needs of the case. While the court acknowledges that the requested information is likely equally accessible to Hystad, it seems likely that XTO is in a greater position to have accessibility and knowledge regarding its lawsuits under which XTO was or is a defendant and includes a claim that XTO failed to pay interest on Untimely Payments. As such, the above quoted portion of the objection is stricken from XTO's answer to Interrogatory No. 10.

### iii.    XTO's Objections to Request for Production Nos. 3, 4, 5, 6, 7, 8, 11, 12, 13, 14, and 15

Hystad asserts that XTO's objections to the Requests are boilerplate and are otherwise improper. The court shall consider XTO's objections in turn.

XTO objects to Request for Production No. 3 to the extent that "the burden of producing every document that relates to all of XTO's statutory interest payments in North Dakota over a nearly seven-year time period is not proportional to the needs of this case." (Doc. No. 23-5). The seven-year period in question refers to November 8, 2016. The court is disinclined to agree with XTO's objection. In the Complaint, Hystad alleges:

> [a]t various times since November 8, 2016, Defendant XTO has made untimely payments ('late payments') to Plaintiff Hystad and the other members of the Class more than one hundred fifty days after the oil or gas subject to the Class members' mineral interests has been marketed by XTO, without paying the eighteen percent per annum interest on such late payments, as required under N.D.C.C. § 47-16-39.1.

(Doc. No. 1-2).

This November 8, 2016, date is reiterated throughout the Complaint. Another excerpt provides that "[s]ince November 8, 2016, XTO has made undress of late royalty payments to Hystad without making the statutorily required eighteen percent annum interest on any such late payments." (*Id.*). Accordingly, the court finds that the burden of producing the requested documents over the seven-year period is proportional to the needs of the case and orders this portion of the objection stricken.

The court is not inclined to address XTO's argument in its response to Request for Production No. 4, wherein XTO argues that "the burden of searching for and producing every document that relates to any request for North Dakota statutory interest over a nearly seven-year time period is not proportional to the needs of this case." (Doc. No. 23-5). The court has previously addressed that the timeframe spanning from November 8, 2016, to the present is proportional. As such, this portion of the objection is stricken.

In its response to Request for Production No. 5, XTO asserts that "the request seeks to impose a burden that is not proportional to the needs of the case, particularly at this stage of the litigation." FED. R. CIV. P. 26(e) requires:

> (1) *In General.* A party who has made a disclosure under Rule 26(a)- or who has responded to an interrogatory, request for production, or request for admission- must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

The court is not persuaded by the argument that Hystad's request imposes a burden not proportional to the needs of the case. Even if there was a burden not proportional to the needs of the case at this particular stage of the litigation, Rule 26(e) requires the parties continue to supplement or correct their disclosures or responses in a timely manner. The court is not inclined to push the burden of production off to a later date when XTO will still be required to make the required disclosures to Hystad under Rule 26(e). Accordingly, the court strikes this portion of XTO's objection in its response to Request for Production No. 5.

In its response to Request for Production No. 6, XTO "objects that the request attempts to impose a burden that is not proportional to the needs of the case." (Doc. No. 23-5). After a review of the record, the court is not persuaded that the request is disproportional to the needs of the case. XTO shall produce to Hystad documents pertaining to proceeds XTO is holding for Owners relating to a production month since November 8, 2016, as provided in Hystad's Request for Production No. 6. The above-quoted objection is hereby stricken.

The court is not inclined to address XTO's objection in its response to Request for Production No. 7, wherein it asserts that "[t]he burden of responding to this request is not proportional to the needs of this case, particularly given the current procedural status of the case."

(Doc. No. 23-5). The court has previously addressed a similar argument provided in XTO's response to Request for Production No. 5. For the reasons expressed by the court in its discussion regarding XTO's response to Request for Production No. 5, the court strikes the above-quoted objection.

The court is also not persuaded by XTO's objection in response to Request for Production No. 8, which the court has previously addressed. For the reasons articulated above in the court's discussion about XTO's response to Request for Production No. 5, XTO's response alleging that "[t]he burden of reasoning to this request is not proportional to the needs of the case, particularly at this stage of the litigation," is stricken.

XTO's response to Request for Production No. 11 asserts that "the request attempts to impose a burden that is not proportional to needs of the case." (Doc. No. 23-5). The court does not agree with XTO that this request imposes a burden not proportional to the needs of the case. The scope of discovery is broad, and there is no indication that XTO is unable to produce the requested documentation. Accordingly, the court strikes the above-quoted objection.

In Request for Production No. 12, Hystad requests XTO "[p]roduce all Documents referring to N.D.C.C. § 47-16-39.1." (Doc. No. 23-5). In its response, XTO argues that "[s]earching for and producing 'all Documents referring to N.D.C.C. § 47-16-39.1' would impose a burden disproportionate to the needs of this case." (*Id.*). The court agrees with XTO. As currently written, this request is overbroad, unlimited in time, and imposes a burden on XTO to produce all documents that may mention § 47-16-39.1. Hystad is hereby ordered to re-write its Request for Production No. 12 and produce the newly formatted request to XTO so that it may amend and supplement its response accordingly.

XTO asserts in its response to Request for Production No. 13 that "[t]he burden of responding to this request is not proportional to the needs of this case." (Doc. No. 23-5). The court is inclined to find that while the burden of responding to the request is proportional to the needs of the case, as currently drafted the scope of the request is unlimited in time and scope. Accordingly, the court orders that XTO "[p]roduce Documents, including leases, divisions orders, pooling orders, and royalty payment information related to XTO Wells in which the Owners have an interest since November 8, 2016."

XTO objects to Request for Production No. 14 in part because "the burden of responding to the request is not proportional to the needs of the case." (Doc. No. 23-5). The court is not persuaded that production in this instance is disproportional. It should not be difficult for XTO to produce available Documents pertaining to its wells, the date of first production and sale, and their API numbers. The court accordingly strikes the above-quoted section of XTO's response to Request for Production No. 14.

In its response to Request for Production No. 15, XTO objects to "the burden of responding to the portions of the request to which XTO as (sic) objected (due to the defined terms) is disproportionate to the needs of the case." (Doc. No. 23-5). The court has addressed the terms to which XTO objects in this response, namely: "Documents," "Untimely Payments, and "Owner." Accordingly, the court is not inclined to find that the request is disproportionate to the needs of the case. As such, this portion of the objection is stricken.

## IV.    CONCLUSION

Hystad's *Motion to Compel* (Doc. No. 23) is **GRANTED IN PART AND DENIED IN PART.** XTO shall amend or supplement its Responses as required to comport with the Rules as

interpreted by the findings of this court. XTO shall provide responsive documents to Hystad's

Discovery Requests within ten (10) days of Hystad providing XTO with its re-written Request.

**IT IS SO ORDERED.**

Dated this 5th day of February, 2024.

/s/ Clare R. Hochhalter
Clare R. Hochhalter, Magistrate Judge
United States District Court