IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Hystad Ceynar Mineral, LLC, on behalf of itself and a class of similarly situated persons,<br><br>        Plaintiff,<br><br>vs.<br><br>XTO Energy, Inc.,<br><br>        Defendant. | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Case No. 1:23-cv-030 |

Before the Court is the Defendant's motion to strike class allegations filed on October 18, 2024. See Doc. No. 44. The Plaintiff filed a response in opposition to the motion on November 8, 2024. See Doc. No. 47. The Defendant filed a reply on November 22, 2024. See Doc. No. 49. For the reasons set forth below, the motion to strike class allegations is granted.

## I.  BACKGROUND

The Plaintiff, Hystad Ceynar Minerals, LLC, ("Hystad"), is a North Dakota limited liability company. Hystad has two members, both of whom are citizens of North Dakota. The Defendant, XTO Energy, Inc. ("XTO"), is a Delaware corporation with its principal place of business in Texas. XTO operates numerous oil and gas wells in North Dakota. As the operator of those wells, XTO produces and markets oil, gas, and related hydrocarbons. XTO then remits sales proceeds to parties who own interests in a given well, including royalty owners who are entitled to a share of production under an oil and gas lease. Hystad owns interests in oil and gas produced from wells XTO operates in North Dakota.

1

On January 10, 2023, Hystad brought an action in state court on behalf of itself and a class of similarly situated royalty owners. See Doc. No. 1-2. On February 13, 2023, XTO removed the action to federal court pursuant to 28 U.S.C. § 1332(d). See Doc. No. 1. Hystad alleges XTO made untimely payments to the Plaintiff and the members of a proposed class without paying 18% interest as required by N.D.C.C. § 47-16-39.1. The Plaintiff defines the class as:

> All persons and entities owning mineral interests in North Dakota wells operated by XTO who, at any time since November 8, 2016, have: (1) received one or more royalty payments or other mineral interest payments from XTO on a date which was more than one hundred fifty days after the oil or gas produced by XTO from a North Dakota well subject to the mineral owner's interest was marketed; and (2) as to any such payment, XTO did not pay the eighteen percent per annum interest required under N.D.C.C. § 47-16-39.1.
>
> Excluded from the Class are: (1) XTO; (2) the United States of America; (3) persons who own mineral interests only in wells operated by XTO in North Dakota which are managed by the board of university and school lands; (4) persons who have been members of the board of university and school lands at any time since November 8, 2016; (5) mineral owners who elected to take their proportionate share of production from an XTO operated well in kind; (6) mineral owners who did not receive royalties from XTO because such mineral owners could not be located after reasonable inquiry; (7) mineral owners to whom XTO furnished with written notice of a title dispute pursuant to N.D.C.C. § 47-16-39.4, and whose payments were suspended as a result of such title dispute; and (8) overriding royalty interests and working interests.

See Doc. No. 43, p. 6. Hystad asserts more than 10,000 members belong to the proposed class. Id. at p. 7.

On October 18, 2024, XTO filed a motion to strike class allegations. See Doc. No. 44. XTO requests the Court strike the class allegations made by Hystad in its First Amended Class Action Complaint. The motion has been fully briefed and is ripe for consideration.

## II.     LEGAL DISCUSSION

Hystad brings a claim on behalf of itself and a proposed class of similarly situated persons for 18% interest under N.D.C.C. § 47-16-39.1, which governs the obligation of an operator arising under an oil and gas lease to pay royalties to a mineral owner and a mineral owner's assignees. N.D.C.C. § 47-16-39.1 provides:

> If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought or if the operator fails to pay oil or gas royalties to an unleased mineral interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, the operator thereafter shall pay interest on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, at the rate of eighteen percent per annum until paid…This section does not apply if mineral owners or their assignees elect to take their proportionate share of production in kind, in the event of a dispute of title existing that would affect distribution of royalty payments, or if a mineral owner cannot be located after reasonable inquiry by the operator; however, the operator shall make royalty payments to those mineral owners whose title and ownership interest is not in dispute.

N.D.C.C. § 47-16-39.1(1).

The Plaintiff brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth the prerequisites to a class action. It provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A district court may grant a motion to strike class allegations prior to the filing of a motion for class certification when "it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080 (8th Cir. 2021) (internal quotation marks omitted). A class cannot be certified when it contains members who lack standing. Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1034 (8th Cir. 2010). Therefore, a class must "be defined in such a way that anyone within it would have standing." Id. "If members who lack the ability to bring a suit themselves are included in a class, the court lacks jurisdiction over their claims." Johannessohn v. Polaris Indus. Inc., 9 F.4th 981, 987 (8th Cir. 2021) (citations omitted).

XTO contends the Plaintiff's statutory interest class allegations fails to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. Specifically, XTO argues Hystad cannot meet the typicality, predominance, and ascertainably requirements because the proposed class definition would require an individual examination for each and every class member and payment. The Plaintiff argues the proposed class definition meets all of Rule 23's requirements.

XTO cites to three recent orders by this Court that struck substantively similar class allegations. This Court concluded that classes seeking interest under Section 47-16-39.1 could not satisfy Rule 23's typicality and predominance requirements in *Hystad Ceynar Mins., LLC v. Whiting Oil & Gas Corp.*, 2023 WL 3467461 (D.N.D. May 15, 2023), *Colton v. Lime Rock Res. GP V, L.P.*, 2024 WL 1637480 (D.N.D. Apr. 16, 2024), and *Penman & Adelante Oil & Gas, LLC v. Hess Bakken Invs. II, LLC*, 2024 WL 3792011 (D.N.D. Aug. 13, 2024). Specifically, the Court found that the class allegations required an individual examination of each class member. In this

4

case, the Plaintiff's statutory interest class allegations present similar typicality and predominance issues as the classes in *Whiting*, *Colton*, and *Penman*. In this case, the proposed class allegations require an individual examination of each class member and payment, which prevents class certification. Based on the pleadings in this case and the relevant case law, the Court finds no reason to depart from its recent rulings.

### A.     TYPICALITY

Under Rule 23(a)(3), the claims of the representative parties must be typical of the claims of the class. "When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir. 1977). However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." Elizabeth M. v. Montenez, 458 F.3d 779, 787 (8th Cir. 2006).

In *Nudell v. Burlington N. and Santa Fe Ry. Co.*, 2002 WL 1543725 (D.N.D. July 11, 2002), the court determined the proposed class and subclass lacked typicality when considering a motion for class certification. The court expressed concerns about the proposed class definitions:

> Most fundamentally, it is difficult to understand how the Court could determine whether a potential class member is in fact a class member without an individualized inquiry. To the contrary, the current class definition would require several factual determinations as to each potential class member. As a threshold matter, each claimant would have to establish that he or she owned land described in the definition … The essential questions here, as stated above, concern property rights. Specifically, the case would require resolution of several property-related issues: the extent of the railroads interest in the land at issue; the extent of each property owners interest; whether the defendants activities regarding laying of fiber optic cable exceeded the scope of the railroads interest vis-a-vis that of the class members; whether any legal defenses exist to bar the claim of each class member, such as consent, acquiescence, or the statute of limitations; and, finally, assuming the claims are legitimate and proven, whether and how much damages are due. The

5

> Court concludes that these decisions turn on so many individual questions that the claims of the named plaintiffs are not typical of the class.

Nudell, 2002 WL 1543725, at *1-5 (D.N.D. July 11, 2002). When comparing the class definition to *Nudell*, the Court in *Whiting* found:

> While Hystad's proposed class concerns persons and entities owning mineral interests in wells, rather than railroad interests, individual questions as to each class member remain. Examining each proposed class member's claim would require verification of the ownership interests and a review of their lease with Whiting to determine whether the member holds the interest required to fall within N.D.C.C. § 47-16-39.1.

Whiting, 2023 WL 3467461, at *4.

The Plaintiff's proposed definition in this case presents similar problems as the classes in *Nudell* and *Whiting*. Each proposed class member's claim would require verification of ownership interest and a review of their lease with XTO to determine whether the member holds the interest required to fall within N.D.C.C. § 47-16-39.1. Evidence would need to be presented regarding the date the oil and gas was marketed for every payment to determine when the payment falls within the parameters of N.D.C.C. § 47-16-39.1.

Additionally, the Plaintiff's proposed class would require an inquiry for every class member to determine whether any safe harbor provisions of N.D.C.C. § 47-16-39.1 apply. In this case, the safe harbor provisions are excluded from the Plaintiff's class definition. As it pertains to the safe harbor provisions, the proposed class definition excludes:

> (5) mineral owners who elected to take their proportionate share of production from an XTO operated well in kind; (6) mineral owners who did not receive royalties from XTO because such mineral owners could not be located after reasonable inquiry; (7) mineral owners to whom XTO furnished with written notice of a title dispute pursuant to N.D.C.C. § 47-16-39.4, and whose payments were suspended as a result of such title dispute;

See Doc. No. 43, p. 6. Accordingly, individual inquiries are necessary for every payment to determine whether any circumstances apply as to the particular payment that precludes a royalty owner from receiving statutory interest under Section 47-16-39.1.

Finally, if proposed class members' claims are legitimate and proven, damages must be calculated separately for every member because the interest due to each member will vary based on when they received each late payment, how much in royalties were due, and whether one of the safe harbor provisions applied for some, but not all, of the time royalties were suspended (e.g. a title dispute resolved partway through the suspense period). These inherently individualized determinations make the Plaintiff's claims atypical of those of other class members. The Plaintiff contends the safe harbor exemptions and the need to verify class members' property interests do not defeat the requirements of Rule 23 because members can be identified through discovery. Even if the class members are ascertainable through XTO's business records, the class lacks typicality because of the numerous individual inquiries necessary to complete a payment-by-payment analysis. Therefore, the Court concludes the proposed class definition does not meet the Rule 23(a)(3) typicality requirement.

### B.   **PREDOMINANCE**

Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed class fails to meet the predominance requirement of Rule 23(b)(3).

In *Ebert v. General Mills*, 823 F.3d 472 (8th Cir. 2016) the Eighth Circuit Court of Appeals addressed the predominance requirement of Rule 23(b)(3). "Rule 23(b)(3) is qualitative rather than quantitative. Thus, that there is a common question does not end the inquiry." Id. at 478. "The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" Id. at 478-79 (citing to Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 479 (internal quotation marks omitted). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation and goes to the efficiency of a class action as an alternative to individual suits." Id. (citations omitted).

The Court's holdings regarding the required individualized determinations that preclude a finding of typicality also preclude a finding of predominance under Rule 23(b)(3). Individual examinations for every class member are a necessary prerequisite to determine whether a particular mineral owner is a class member and whether N.D.C.C. § 47-16-39.1 applies and was violated. The verification of leases and ownership interests, the determinations of the existence of safe harbor provisions, and the determinations of proper notice regarding title disputes are individual questions that would require every proposed class member to present evidence for every payment that allegedly falls within the class allegations in this case. These individual inquires would be time-consuming and inefficient. The individualized issues in this case predominate over the common claim for relief by the proposed class. Accordingly, the Court grants the Defendant's motion to strike the class allegations.

**III.     CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion to strike class allegations (Doc. No. 44) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 18th day of February, 2025.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
